# Wright *versus* Burbank.

1. A principal instructed agents conducting his plantation: "it is
expressly understood that your purchases shall be for cash." This was
communicated to a merchant with whom the agents dealt. *Held*, that goods
sold by him to the agent on credit, were sold on the personal credit of the
agent.

2. The principal might ratify the act of the agent.

3. The principal knowing that goods had been purchased by the agent,
for his plantation on credit, authorized another agent to settle the claim.
*Held*, to be evidence of ratification.

4. Circumstances in this case evidence of ratification.

February 14th and 15th 1870. Before READ, AGNEW, SHARS-
WOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* Of July Term
1869, No. 207.

This was an action of assumpsit brought by Edward W. Bur-
bank against James A. Wright, for goods, &c., furnished by the
plaintiff to Taylor and Bacon, agents of the defendant in the
cultivation of two plantations in Louisiana, known as "Orange
Grove" and "Fazende," which the defendant held by lease. The
bill of particulars filed by the plaintiff exhibited a claim for
$6815.85, "balance due on book account for goods sold and deli-
vered, money advanced and expended by plaintiff to Taylor and
Bacon, agents of the defendant James A. Wright, &c., between
February 15th 1865 and May 9th 1866."

The agency was constituted by the following letter:

Philadelphia, Feb. 11th 1865.

Messrs. Taylor & Bacon, New Orleans, Gents.

A party of friends having agreed to raise the sum of $20,000,

[Wright *v.* Burbank.]

in addition to the stock of horses, mules and agricultural implements which may be left over from the enterprise of 1864, for the purpose of cultivating cotton lands in the state of Louisiana, I do now and hereby confirm your appointment as my agents to carry out the above-named purpose.   My chief object in this agency being to raise a crop of cotton on the lands leased, you will therefore limit your action chiefly to that, making no purchases or sales or contracts save such as are closely connected with, or will aid and promote said purpose, it being expressly understood that your purchases shall be for cash, and that you shall pay promptly on delivery of all goods purchased.   In pursuance of the purpose above named, you will, if not already done, procure on lease in suitable locations, a sufficient quantity of land suitable for the culture of cotton, and in quantity to suit the stock on hand, thoroughly prepare the land, plant the same in cotton seed for the crop, and in such cereals as may be desirable for the use of the stock and hands to be employed.   I cannot at this time and at this distance from the scene of operations, give you very specific instructions for your government, but you must keep full and accurate accounts of all your receipts and expenditures, and from time to time transmit me copies of the same by mail, and you will by letters, at intervals not exceeding two weeks, keep me fully informed of your proceedings, and for your good and faithful services your compensation shall be such as has heretofore been agreed upon.          Yours respectfully,

JAMES A. WRIGHT.

Burbank the plaintiff was a grocer in New Orleans.   In March 1865, Taylor being at Burbank's was asked by him where he intended to procure his plantation supplies.   Taylor told him his instructions were to buy exclusively for cash.   He asked Taylor to make his purchases of him, and he would open an account on a cash basis, "to be retired at any moment when the money was wanted."   Taylor told him the money was to come from a party of gentlemen in Philadelphia, of whom he named the defendant as one.   Taylor and Bacon afterwards bought goods in the name of both plantations under the arrangement spoken of.   There was evidence that the letter of the defendant of February 11th 1865, to Taylor and Bacon had been shown to the plaintiff.

E. A. Yorke was afterwards appointed agent for the defendant, by the following letter :

"Philadelphia, Jan. 29th 1866.
Edward A. Yorke, Esq., New Orleans.

Dear Sir : I had the pleasure on the 25th of stating that I would send you instructions in regard to the disposition of property mules, agricultural implements, &c., &c., most of which are on

the two plantations of 'Orange Grove' and 'Fazende,' which have been managed by my agents Messrs. Taylor and Bacon for about two years past. I now enclose you an inventory, &c. * * * The whole property as you will observe amounts to $23,187.94. Mr. Taylor does not hesitate to say that the property is worth fully this amount; but if he and Mr. Bacon or either of them arrange so that we shall receive $20,000 for this property, * * * you are authorized to dispose of it to them, or whichever of them is able to make this arrangement.

" Mr. Taylor, when here, reported debts due to three parties in New Orleans, Messrs. Weed, Witters & Co., Wallace & Co. and E. W. Burbank, in all about $8000, mostly to the latter. If in the above arrangement this indebtedness is paid off or satisfied as between the three firms named above and Messrs. Taylor and Bacon, agents for ' Orange Grove' and ' Fazende' plantations, against whom I suppose the charges appear, so that there may remain no claim against me or any of the other parties associated with me in interest, then that amount may be considered as equivalent to *cash.* * * * I enclose you herein a paper signed by the different parties interested confirming the authority which I herein give as treasurer and manager."

Burbank, on 28th of May 1866, wrote to Wright as follows:—

" You are aware, I suppose, of your business transacted with me by your agents, Messrs. Taylor and Bacon, of the Orange Grove and Fazende Plan. I have rendered the accounts of both places to Mr. E. A. Yorke, and I think are ere this in your possession. Being at the present time very much in need of funds, I would request of you to remit balance of accounts, say

| | |
|---|---:|
| Orange Grove | $3763.94 |
| Fazende | 2638.51 |
| | $6402.45 |

and interest thereon as per accounts. Mr. Taylor thought at one time that there would be enough to sell on both places to liquidate the debt. Undoubtedly there would have been enough had the sale been made at a much earlier period, but it not having been so, the property sold and payments of all not having been collected yet, leaves the above amount now due." * * *

To which Wright, the defendant, replied June 15th 1866:—

" Your letter of 28th ult. is received and contents noted; I can only say in reply that up to the present time I have no evidence whatever that the bills alluded to by you were made on my account. When Mr. Taylor was last here he stated that some debts had been incurred but the amounts he named, and those of the bills rendered so widely differ, that it is impossible to believe that there is not some mistake, and I have therefore directed Mr. Yorke to pay no more money upon any of them until further advised. Neither Mr. Taylor nor Mr. Bacon ever had any au-

[Wright *v.* Burbank.]

thority from me to contract debts; on the contrary they received special written instructions to pay cash for everything they purchased on my account."

Yorke testified that the accounts of the plaintiff with Taylor and Bacon came under his notice; that on the 19th of April 1866 he paid Burbank, on account of Taylor and Bacon's indebtedness $700, and on the 27th of October 1866 he paid $800; the money was derived from cash and notes delivered to him by Taylor and Bacon; he received authority from the defendant to settle this claim, and to effect an amicable settlement of the account between the plaintiff and Taylor and Bacon; the plaintiff and Yorke sold the stock, &c., of the plantations, the cash realized was paid to Burbank and another New Orleans creditor; Yorke pledged to the plaintiff the crop of 1866, from the Fazende plantation, in payment of his claim, and if that should not be sufficient, the proceeds of stock and implements which Yorke sold to Taylor.

The court (Stroud, J.) charged:—

"The claim is for goods furnished to these plantations. Mr. Wright conceived the design of carrying two plantations in Louisiana. Such an enterprise required the agency of some one on the spot. Who should be that agent was a very important matter. Mr. Wright had the right to limit the power of his agents, and if the instructions to his agents were made known to the person the agent dealt with, he was bound by them. Now these instructions were contained in the letter of Wright to Taylor and Bacon. This letter of instructions governed the agents, and having received it, Taylor details in his deposition what he did under it. He had become connected with the plaintiff in some previous transactions, and he either exhibited the letter of instructions to him, or at least fully informed him of the nature of it, and particularly that he was limited to buy only for cash: and the first thing the plaintiff did was to offer to sell on ninety days' credit. The question for you to consider is, what was the understanding at the outset; it was to be an open account with Taylor and Bacon, and so to continue to the end of the chapter. You will consider whether any such authority was given to the agents to allow them to buy on credit. [But Mr. Wright might ratify their unauthorized act. The plaintiff says that these acts have been ratified by what defendant has done; he received the products of the plantations—this would not ratify. I leave it to you to say further, by the fact of appointing Mr. Yorke the agent, and his acts. You will have the document to see if you can draw from it any evidence of ratification. I leave the whole matter of ratification to you."]

The verdict and judgment were for the plaintiff for $6924.39.

The defendant took a writ of error, and assigned the portion of the charge in brackets for error.

[Wright v. Burbank.]

*A. S. Letchworth*, for plaintiff in error.—To ratify the unauthorized act of an agent it must be done with a full knowledge of the facts: Orwing *v.* Hall, 9 Peters 609.

*C. H. Hornor*, for defendant in error.—The defendant knew the manner in which his agents did business with the plaintiff, and not having repudiated them, is estopped: Hill *v.* Epley, 7 Casey 334; Story's Agency, §§ 85, 253, 258; Beaty *v.* Lycoming Ins. Co., 2 P. F. Smith 456.

The opinion of the court was delivered by

SHARSWOOD, J.—The defendant below employed Taylor and Bacon to lease and conduct for him, and others associated with him, one or more cotton plantations in Louisiana. He instructed them to make their purchases for supplies only for cash, and this instruction was communicated to the plaintiff, from whom, however, the agents procured goods on credit. It is not to be questioned, under these circumstances, that the plaintiff thereby is to be considered as having looked to the personal credit of the agents and not to the principal for payment. Their unauthorized act, however, was susceptible of ratification, and the only point arising upon this record is the exception to the charge of the learned judge in leaving that question to the jury. It is contended that there was no evidence which would justify such an inference. That what took place would amount to a ratification is evident if the principal was fully aware of all the facts. Without such knowledge it must be conceded that it would be unavailable: Orwing *v.* Hall, 9 Pet. 609. That he knew that the goods were obtained on credit is very clear. In his letter of January 29th 1866 to Mr. Yorke he said: "Mr. Taylor, when here, reported debts due to three parties in New Orleans, Messrs. Weed, Witters & Co., Wallace & Co., and E. W. Burbank, in all about $8000, mostly to the latter." Mr. Burbank wrote to him under date of May 28th 1866, informing him of the amount of his demand, and requesting him to remit. In his answer, June 15th 1866, he says, "Up to the present time I have no evidence whatever that the bills alluded to by you were made on my account;" and then proceeds to deny any authority of Taylor and Bacon from him to contract debts. With the knowledge then of this claim upon him, grounded on his liability for the contracts of Taylor and Bacon as his agents, he subsequently authorized Mr. Yorke, according to the testimony of that gentleman, to settle it. Mr. Yorke made payments to Mr. Burbank on account, as he said, of alleged indebtedness of Orange Grove and Fazende plantations, belonging to Mr. Wright. Indeed it does not appear to have been questioned that the supplies furnished by the plaintiff went to these plantations. After the knowledge that debts had been

incurred by his agents for them, he authorized a settlement, and the settlement or part of it was, according to the testimony of Mr. Yorke, that "the Fazende plantation was allowed to go on raising a crop, Mr. Taylor taking the stock and implements belonging to the same at a certain amount, for which he gave James A. Wright a lien on the cotton crop of 1866; also on the stock and implements aforesaid. This was done with the knowledge and consent of E. W. Burbank: I giving him a verbal promise that the whole proceeds of the cotton crop of 1866, and if that was not sufficient, then the stock and implements should be sold, and the amount so collected paid to E. W. Burbank to liquidate the alleged indebtedness of Orange Grove and Fazende plantations, prior to 1st January 1866." It is urged, however, that this is no evidence—that he knew that the debt had been incurred on his credit contrary to his instructions. This does not seem to be absolutely necessary. It is quite sufficient that he knew it had been incurred by his agents in the course of his business for his benefit; and having received that benefit, if he recognised the claim as fairly entitled to be paid out of his property, a jury might well infer a ratification of the contract made by his agents, though originally without authority. We think, therefore, that the learned judge committed no error in submitting the question to the jury.

Judgment affirmed.